**JOSEPH E. THAGGARD**
**JEFFREY K. STARNES**
Assistant U.S. Attorneys
U.S. Attorney's Office
901 Front Street, Suite 1100
Helena, MT 59626
Phone: (406) 457-5120
FAX:    (406) 457-5130
E-Mail: joseph.thaggard@usdoj.gov
        jeff.starnes@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**MARTIN EDWARD REAP,**<br><br>Defendant. | CR 16-7-H-SEH<br><br>**UNITED STATES' OFFER OF PROOF** |

The Defendant, Martin Edward Reap, appears before the Court to plead guilty to Count V of the indictment, which charges him with the offense of accepting bribes, a violation of 18 U.S.C. § 666(a)(1)(B).   The elements of that offense are: (1) in any one year period of time beginning February 1, 2014 and ending April 30, 2017, the Montana State Prison received more than $10,000 in federal funds in grants, contracts,

subsidies, loans, guarantees, insurance, and other forms of federal assistance; (2) the Defendant was an agent (which includes an employee) of the Montana State Prison; and (3) the Defendant knowingly and corruptly accepted anything of value for a transaction or series of transactions of the Montana State Prison with a value of $5,000 or more.[1]

If this matter proceeded to trial, the government would admit the following evidence to establish that the Defendant's conduct violated the essential elements of Count V:

1.  Montana State Prison Warden Leroy Kirkegard would testify that the Defendant was an employee and agent of the Montana State Prison in Deer Lodge, Montana in the time period between 2012 and April 2016.  Warden Kirkegard would testify that a critical component of the services by the Montana State Prison to the prison population resides in excluding contraband—including controlled substances and tobacco—from the prison.  Warden Kirkegard would testify the exclusion of such contraband from the prison is necessary to ensure the general safety of the prison population and to facilitate the rehabilitation of those prisoners who suffer from problems associated with the use of controlled substances;

2.  Warden Kirkegard would testify that the Defendant, as an explicit condition

---

[1] The term "transaction" is broad, referring to "*any* transaction" relating to the bribe. *United States v. Simas*, 937 F.2d 459, 463 (9th Cir. 1991), citing § 666(a)(1)(B) (italics in the original).  The $5,000 value refers to the value of the transaction or series of transactions provided, not simply the amount of the bribe given.  See, e.g., *United States v. Fernandez*, 722 F.3d 1, 12-13 (1st Cir. 2013).

of his employment, acknowledged that he would not introduce any contraband into the Montana State Prison;

    3.   Warden Kirkegard would testify that, during any one year period of time beginning February 1, 2014 and ending April 30, 2017, the Montana State Prison received more than $10,000 in federal funds in the form of grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance from the United States' government;

    4.   Federal Bureau of Investigation (FBI) Special Agent Bart Boodee would testify that, in 2015, he began to investigate allegations that the Defendant was smuggling contraband, including controlled substances and tobacco, into the Montana State Prison facility in Deer Lodge.  Special Agent Boodee would testify that he interviewed various prisoners at the Montana State Prison who stated that the Defendant provided tobacco and controlled substances to inmates confined in the Montana State Prison in exchange for the payment of bribes to the Defendant;

    5.   The inmates interviewed by Special Agent Reap would testify that the Defendant did, in fact, smuggle controlled substances and tobacco into the Montana State Prison, which he then provided to inmates who distributed the contraband to other inmates.  The inmates interviewed by Special Agent Reap would further testify that they arranged for the Defendant to receive bribes from the recipients of the contraband as payment for the transactions wherein the Defendant brought the drugs into the prison;

6. Special Agent Boodee would testify that he interviewed the Defendant on April 12, 2016. Special Agent would testify the Defendant admitted that, beginning in approximately 2014, at the request of inmates, he began to provide tobacco to the inmates. Special Agent Boodee would testify the Defendant stated that he subsequently smuggled approximately 9-16 ounces of marijuana and a small amount of "Spice" (a synthetic form of marijuana) into the inmates during a series of transactions. Special Agent Boodee would testify that the Defendant admitted he received bribes—typically ranging from $100.00 to $150.00—for bringing the tobacco and controlled substances into the prison, for a total of $6300 to $6500. Special Agent Boodee would further testify the Defendant said associates of the inmates mailed the bribes to the Defendant's residence;

7. Inmates interviewed by Special Agent Boodee would testify that, due to high black market value of drugs in prison, the collective value of even the lowest estimate of marijuana and Spice that the Defendant admitted to introducing into the prison exceeded $5,000.

DATED this 13th day of June, 2016.

MICHAEL W. COTTER
United States Attorney

*/s/ Joseph E. Thaggard*
JOSEPH E. THAGGARD
Assistant U.S. Attorney
Attorney for Plaintiff